E. L. DILDINE, Respondent, v. FORD MOTOR COMPANY, Appellant.

Kansas City Court of Appeals, November 6, 1911.

CONTRACTS: Construction.   Plaintiff and defendant executed a contract making plaintiff defendant's agent to sell its cars on commission in a certain territory.  Plaintiff sent in an order for one car, which order was accepted, but before the order was filled defendant raised objection that plaintiff had not done a satisfactory amount of business, and demanded that he execute an employment contract with more vigorous terms than the first, and defendant insisted that if he did not execute the contract it would not deliver the car on the terms fixed by the original contract, but he would have to pay therefor the list price without any commission.  Plaintiff declined to sign the contract, refused to pay the price last demanded, and sued for his commission. The defendant sought to justify its action under a clause of the original contract which provided that the defendant did not agree to ship plaintiff any of its products, and that all orders were accepted by it with the express understanding that prices were subject to change.  Taking the instrument as a whole, and giving effect to the evident mutual intention of the parties, this clause of the contract is construed as a shield to protect defendant from loss arising from unexpected conditions of business, and not as a club to compel one of its agents to enter into a contract which he deemed unfair.  Defendant had no right to refuse to perform its original contract, and plaintiff was entitled to his commission.

*Scarritt, Scarritt & Jones* for appellant.

*Frost & Frost* for respondent.

JOHNSON, J.—The object of this suit is the recovery of an agent's commission earned in the sale of an automobile made by plaintiff pursuant to the terms of a contract of agency he had with defendant. The cause of action pleaded in the petition is a breach of the contract of agency in the failure and refusal of defendant to ship a car plaintiff had sold to a customer and ordered of defendant. It appears from the terms of the contract pleaded that plaintiff had earned a discount or commission of fifteen per cent on the list price of the car. After reciting the provisions of the contract the petition alleges:

"That plaintiff performed all the covenants and agreements contained in said contract to be performed by him, and was furnished with list prices by said second party, and expended time and money in procuring and attempting to procure purchasers for said motor cars or automobiles, and on the ——— day of September, 1908, did procure a purchaser for a 'Model T. Touring Car' at the price and sum of $850. That under the terms of said contract plaintiff was entitled to a discount or commission of fifteen per cent on the purchase price of said car, amounting to the sum of $127.50. That on the 8th day of September, 1908, he ordered said car from the defendant and deposited $100 on the purchase price thereof with defendant, and his said order was received by the defendant and accepted by it, and thereupon defendant promised and agreed to ship said car to plaintiff, but wholly failed to do so, and thereafter without any fault on plaintiff's part defendant refused to ship or deliver said car to plaintiff. That by reason of the defendant's failure to furnish and deliver said car as agreed and its refusal so to do plaintiff was unable to complete said sale, and was thereby damaged in the sum of $127.50, for which sum and for his costs the plaintiff asks judgment."

A general denial and some special defenses are pleaded in the answer. In addition defendant filed

a counterclaim, but since it is conceded that the trial court properly disposed of the counterclaim, our only concern is with the question of whether or not the judgment that plaintiff recover the commission demanded in his petition finds support in the law and evidence of the case.

Defendant is a manufacturer of motor cars, with its principal office in Detroit and a branch office in Kansas City. On January 6, 1908, plaintiff, who was in business in Cameron, entered into a written contract with defendant by the terms of which he was given the exclusive right to sell defendant's output in Cameron and vicinity, for a period expiring on the 30th day of September of the same year. One of the provisions of the contract was that plaintiff "is in no way the legal representative or the agent of the party of the first part (defendant) and has no right or authority from said first party to assume any obligation of any kind, expressed or implied, on behalf of said first party." However, all the provisions of the contract which is denominated on the back a "Selling Agreement" shows that plaintiff was constituted a factor of defendant for the territory mentioned.

The contract required plaintiff to sell cars at list prices and he received his compensation or commission in the form of a discount from the list price of a stated percentage. On cars of the type in suit the discount was fifteen per cent. Plaintiff sold a Model "T" touring car at the list price of $850 to a solvent customer in Cameron and on September 9, 1908, sent the following order to defendant's office at Kansas City:

"Please enter my order for one Model "T" touring car to be shipped to Kansas City, Mo., Oct. 1st. Check for $100 enclosed herewith. This check is advance payment on the car. Please acknowledge by return mail." Under date of September 12th, defendant by mail accepted the order in the following language:

"We wish to acknowledge receipt of your favor of the 9th inst., ordering one Model "T" touring car, also remittance of $100 to apply as part payment on same. This order has been entered as our No. 12, and will be shipped on October 1st, or as soon as possible thereafter. We have entered equipment as per specifications. Thanking you for the order and remittance, and hoping to hear from you further, we remain," etc.

Point is made by defendant that the car was ordered for demonstration purposes and there is foundation for this claim in one of the subsequent letters written by plaintiff, but the order and acceptance which consist of the letters above quoted, do not state that the order was not for the delivery of the car to a purchaser, and we think all of the evidence shows that such was the purpose of the order fully understood by defendant. Correspondence ensued between the parties relative to a renewal of the agency contract and they failed to come to an understanding. It appears that defendant was dissatisfied with the amount of business plaintiff had done under the expiring contract and required assurance from plaintiff that a certain amount of sales would be made by him under the proposed contract. Plaintiff refused compliance with this demand and the negotiations ended. In one of its letters, dated October 28th, defendant refused to allow any discount on the car ordered, the delivery of which then was overdue, unless plaintiff would enter into a new agency contract on the terms proposed by defendant. We quote from the letter:

"Upon looking over our books we find that last year you had but one car, and of course you understand this is not at all satisfactory to us. If, at the time we sold you one machine, we had figured you would sell no others, we could not have made you better than our retail price, so therefore, unless you will fill out the rider which we enclose herewith, for

an amount of business that is reasonable to expect from your town, we cannot make a contract with you for the coming season, and the best we could do on price of car ordered, unless contract is made, would be $850 f. o. b. Detroit."

Plaintiff replied by demanding the return of his deposit of $100 and the payment of his commission on the sale of the car. Defendant returned the deposit but refused to pay the commission and this suit followed. Defendant seeks to sustain its position by the provisions of the seventh paragraph of the agency contract which is as follows:

"It is expressly agreed . . . that the party of the first part does in no wise agree to ship any of its products to the party of the second part, and that if during the period of this contract orders for automobiles, accompanied by deposits, are sent in and accepted by the party of the first part, that they are accepted with the express understanding that prices and discounts are subject to change before shipment is made, in which event, however, the party of the second part shall be notified and he shall, at his option have the right to cancel such order for automobiles and to demand and receive back from said party such deposits as he may have previously made thereon."

Whether or not plaintiff is entitled to recover his commission depends on the interpretation of this clause. Defendant contends that it had the right for any cause or for no cause at all to refuse to fill the order it accepted and promised to fill, or that if it filled the order, defendant still had the right to follow its own caprice by refusing to pay plaintiff any commission. This contract, which appears to have been drafted by defendant, is most one-sided in its terms, but we do not think it goes to the extreme of defendant's position. We concede that courts cannot make contracts for people and are charged with the duty of enforcing the contracts they make for themselves, but in the

interpretation of contracts the whole instrument must be considered in the light of its expressed objects with a view to ascertain and give effect to the mutual intention of the parties.

The wonderful expansion of the automobile business during the past few years is a matter of common knowledge. Evidently defendant, to guard against the contingency of being embarrassed by a flood of business on an unsettled market, sought to retain control of a situation which, but for some such stipulation, might become pregnant with loss and annoyance. But we think the stipulation was only intended to give defendant control over general conditions and contingencies and was not intended for use as a weapon of fraud or of individual oppression. When plaintiff sold an automobile at list price, he had a right to expect that his order would be accepted and when accepted that it would be filled except for the happening of some contingency contemplated in the seventh clause. The confession of defendant that it was using that clause merely as a weapon to force plaintiff into an obnoxious contract was tantamount to an admission that no condition existed that would call into operation the provision of that clause. The conduct of defendant impresses us as arbitrary and unwarranted and we think the learned trial judge was right in holding that plaintiff was entitled to his commission.

Accordingly the judgment is affirmed. All concur.